## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| HDI GLOBAL SPECIALTY SE, f/k/a International Insurance Company of Hannover SE, )<br><br>Plaintiff, )<br><br>VS. )<br><br>PF HOLDINGS, LLC, SCHOOLHOUSE ROAD ESTATES, INC., RALSTON GA, LLC, PF RALSTON, LLC, PHILIP HADLEY, and JENNIFER GLAUBIUS, )<br><br>Defendants )| Civil Action File No.:_____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff HDI GLOBAL SPECIALTY SE, f/k/a International Insurance Company of Hannover SE ("HDI") files this Complaint for Declaratory Judgment against PF HOLDINGS, LLC ("PF Holdings"), SCHOOLHOUSE ROAD ESTATES, INC. ("Schoolhouse"), RALSTON GA, LLC ("Ralston GA"), PF RALSTON, LLC ("PF Ralston"), PHILIP HADLEY, and JENNIFER GLAUBIUS (collectively the "Defendants"), stating as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage action in which HDI seeks a declaratory judgment, under 28 U.S.C. § 2201, regarding its duty to defend and/or indemnify any party against the claims asserted by Jennifer Glaubius and Phillip Hadley (collectively, the "Claimants"), as articulated in the lawsuits filed in the State Court of Muscogee County styled as *Jennifer Glaubius v. Ralston GA LLC d/b/a The Ralston, et. al,* Case No. SC 19 CV 1598 (the "Glaubius Lawsuit") and *Philip Hadley v. Ralston GA LLC d/b/a The Ralston, et. al,* Case No. SC 19 CV

1597 (the "Hadley Lawsuit"), respectively.  The Glaubius Lawsuit and the Hadley Lawsuit are referred to collectively herein as the "Lawsuits."

## THE PARTIES & JURISDICTION

2.      HDI is a corporation organized and existing under the laws of Germany.  HDI is headquartered in Germany.  HDI is a citizen of Germany for purposes of jurisdiction and voluntarily submits to jurisdiction in this Court for purposes of this action.

3.      Upon information and belief, PF Holdings is a limited liability company organized under the laws of Delaware and with a principal place of business in New Jersey. Upon information and belief, for purposes of citizenship, PF Holdings is a citizen of New Jersey and Delaware and is not a citizen of Germany.

4.      PF Holdings can be served through the Georgia Secretary of State, or its registered agent at 10 Sterling Boulevard, Suite 402, Englewood, NJ, 07631 or, upon information and belief, at its principal office address of 10 Hill Street, Newark, New Jersey 07102.

5.      Upon information and belief, Schoolhouse is a corporation organized and existing under the laws of New York with its principal place of business in New York, New York.  Upon information and belief, for purposes of citizenship, Schoolhouse is a citizen of New York and is not a citizen of Germany.

6.      Schoolhouse may be served with process, upon information and belief, at its principal office located at 1876 50th Street, Brooklyn, New York 11204.

7.      Philip Hadley is an individual residing in Muscogee County, Georgia.  Mr. Hadley is a citizen of Georgia.

8.      Jennifer Glaubius is an individual residing in Muscogee County, Georgia.  Ms. Glaubius is a citizen of Georgia.

9.      Upon information and belief, Ralston GA is a corporation organized and existing under the laws of Georgia with its principal place of business in Brooklyn, New York.  Upon information and belief, for purposes of citizenship, Ralston GA is a citizen of New York and Georgia and is not a citizen of Germany.

10.      Ralston GA can be served through the Georgia Secretary of State, or its registered agent, VCORP Agent Services, Inc., located at 453 Hardy Ives Lane, Lawrenceville, GA 30045 or, upon information and belief, at its principal office address of 1223 East 13th Street, Brooklyn, New York 11230.

11.      Upon information and belief, PF Ralston is a corporation organized and existing under the laws of Georgia with its principal place of business in Newark, New Jersey.  Upon information and belief, for purposes of citizenship, Schoolhouse is a citizen of New Jersey and Georgia and is not a citizen of Germany.

12.      PF Ralston can be served through the Georgia Secretary of State, or its registered agent, Yaakov Litvin, at 515 Timber Valley Road NE, Atlanta, Georgia 30342, or, upon information and belief, at its principal office address of 10 Hill Street, Newark, New Jersey 07102.

13.      The Court has personal jurisdiction over each of the Defendants by virtue of sufficient contacts with the forum, including involvement with an apartment complex located in Muscogee County, Georgia, known as the "Ralston."

14.      Complete diversity of citizenship exists between HDI and each of the Defendants. The amount in controversy exceeds $75,000.

15.      This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

16. Venue is proper because a substantial part of the events giving rise to the allegations in the Lawsuits occurred in this division and, in the alternative, at least one defendant is subject to the Court's personal jurisdiction in this division, pursuant to 28 U.S.C. § 1391.

17. HDI has named Mr. Hadley and Ms. Glaubius, the plaintiffs in the Lawsuits, as well as the remaining Defendants, in this action in order to ensure complete relief.

18. This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to HDI's obligations to PF Holdings or Schoolhouse under a policy of insurance issued to Ralston GA and PF Ralston for the Lawsuits and the claims asserted therein. HDI is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policy, including its duty to defend and/or indemnify PF Holdings or Schoolhouse against the claims asserted in the Lawsuits. An actual and justiciable dispute over those duties, rights, and obligations exists between the parties.

## THE POLICY

19. HDI issued a commercial general liability insurance policy, no. CAS000077/1700 to PF Ralston LLC and Ralston GA LLC, for the policy period December 28, 2017 through December 28, 2018 (the "Policy"). (A copy of the Policy is attached as Exhibit "A").

20. In this case, the Policy is the applicable policy because it was the policy in effect when the alleged incidences and poor property conditions giving rise to the Claimants' alleged injuries took place.

21. The Policy's terms and conditions include, among other forms, a Commercial General Liability Coverage Form. The Policy's Commercial General Liability Coverage Form includes the following provisions regarding who is an insured:

### SECTION II – WHO IS AN INSURED

4

**1.** If you are designated in the Declarations as:

\*\*\*

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

\*\*\*

**2.** Each of the following is also an insured:

\*\*\*

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

Ex. A, Form CG 00 01 04 13, pp. 9 and 10 of 16.

22.    The Policy's Commercial General Liability Coverage Form also includes, among other terms, conditions, and endorsements, the following Coverage A Bodily Injury and Property Damage insuring clause:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

5

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage "occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*Id.* at p. 1 of 16.

23.    The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at p. 15 of 16.

24.    The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at p. 13 of 16.

25.    The Policy defines "property damage" in relevant part as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." *Id.* at p. 15 of 16.

26.     The Policy's Coverage A contains an Expected or Intended Injury Exclusion that provides, in relevant part, that this insurance excludes from coverage, "'bodily injury' . . . expected or intended from the standpoint of the insured."  *Id*. at p. 2 of 16.

27.     The Policy's Commercial General Liability Coverage Form also includes, among other terms, conditions, and endorsements, the following Coverage B Personal and Advertising Injury insuring clause:

**COVERAGE B – PERSONAL AND ADVERTISING**

**INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id.* at p. 6 of 16.

28.     The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more" identified offenses, including "the

wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." *Id*. at p. 15 of 16.

29.     The Policy's Coverage B contains a Knowing Violation of the Rights of Another Exclusion that states "this insurance does not apply to . . . 'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" *Id.* at p. 6 of 16.

30.     The Policy also contains a Punitive Damages exclusion, that states: "This insurance does not apply to . . . any claim of or indemnification for punitive or exemplary damages.   If a 'suit' seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide a defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages."  Ex. A, Form CAS 14 66 07 17.

31.     The Policy contains the following conditions for coverage:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**   You must see to it that we are notified as soon as     practicable  of an "occurrence" or an offense which may result in a claim. To the extent  possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**   If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Ex. A, Form CG 00 01 04 13, p. 11 of 16.

32.     HDI also issued Policy No. CAS000077/1800 to Ralston GA LLC and PF Ralston LLC, effective December 28, 2018 through December 28, 2019 (the "2018-19 Policy"). (A copy of the Policy is attached as Exhibit "B").

33.     No entity has sought coverage specifically under the 2018-19 Policy and the 2018-19 Policy is not specifically at issue.

34.     The 2018-19 Policy is substantially the same as the Policy in its terms, conditions, exclusions, and limitations.

## THE LAWSUITS

35.     The Claimants asserted claims against PF Holdings and Schoolhouse in the Lawsuits.  (Copies of the Hadley and Glaubius Lawsuits are attached hereto as Exhibits "C" and "D," respectively).

36.     The Lawsuits allege that Mr. Hadley and Ms. Glaubius were both residents at an apartment complex known as "The Ralston," located in Columbus, Georgia (the "Property").

37.     The Claimants claim PF Ralston leased the Property to Ralston GA, who was responsible for the maintenance and operation of the Property. The Claimants further claim PF Holdings managed the Property for a monthly fee and that Schoolhouse is the sole member and direct controlling entity of Ralston GA.  PF Ralston, Ralston GA, PF Holdings, and Schoolhouse are collectively referred to herein as the "Named Defendants."

38.     In the Lawsuits, the Claimants allege poor living conditions at the Property.  The Lawsuits allege the living conditions at the Property began to deteriorate on or around January 2017, marked by the Department of Housing and Urban Development ("HUD") issuing a failing inspection score for the Property and that low and failing inspection scores were continually issued thereafter.

39.     The Lawsuits make numerous assertions regarding the failure of the Named Defendants to properly maintain the Property, including allegations of unaddressed issues with elevator maintenance, threats of utilities being discontinued because of late payments, unaddressed issues with the Property's lobby restroom, unaddressed issues with heating and cooling systems at the Property, lack of hot water, and roach and bed bug infestations.

40.     The Claimants specifically allege that on or around January 4, 2018, HUD conducted an on-site visit of the Property and determined there was a mechanical failure of the

heating and hot water system.  As a result, HUD ordered PF Ralston to provide hotel rooms for residents who did not have hot water and/or heat.  PF Ralston purportedly provided hotel rooms for two nights at a Motel 6 approximately 3.3 miles away from the Property.  The Claimants claim residents who were displaced to the Motel 6 were told on Sunday, January 7, 2018, that they had to leave because the Property's owners would not approve and pay for any additional nights at the Motel 6.  The Claimants allege buses did not run on Sundays in Columbus, and the displaced residents, which included the Claimants, were forced to walk the approximate 3.3 miles back to the Property in the cold.

41.    Mr. Hadley claims that because he had to walk back to the Property in the cold, he "got sick and sustained injuries to his leg."

42.    Ms. Glaubius claims that because she had to walk back to the Property in the cold, she "got sick and sustained injuries."

43.    In the Lawsuits, the Claimants also generally claim they suffered from bed bug bites and severe emotional distress.

44.    In the Lawsuits, the Claimants have asserted claims for (1) violation of Georgia's Fair Business Practices Act ("FBPA"), (2) negligence, (3) breach of implied warranty of habitability/invasion of the right of private occupancy of a room, (4) attorneys' fees, and (5) punitive damages.

45.    In the Glaubius Lawsuit, Ms. Glaubius has also asserted claims for (1) interference with property rights and (2) unjust enrichment and quantum merit.  Ms. Glaubius' unjust enrichment and quantum merit claim is based on Ms. Glaubius' allegation that she worked for PF Holdings and Schoolhouse between late 2015 and January 2016 and was not fairly compensated for her work.

46.     On or around October 28, 2019, prior to filing of the Lawsuits, the Claimants' counsel made a pre-suit demand for relief pursuant to Georgia's Fair Business Practice Act against the Named Defendants (the "Pre-Suit Demand").  (A copy of the October 28, 2019 demand and enclosures is attached hereto as Exhibit "E").

47.     HDI timely responded to the Pre-Suit Demands on December 6, 2019, requesting more information to evaluate the claims.  (A copy of the response to the Pre-Suit Demand is attached hereto as Exhibit "F").

48.     The input of PF Holdings and Schoolhouse's counsel, Jason Crawford, was solicited prior to issuing a response to the Pre-Suit Demand.

49.     A reservation of rights letter was issued to Ralston GA and PF Ralston on December 23, 2019.  (A copy of the reservation of rights letter issued on December 23, 2019 is attached hereto as Exhibit "G").

50.     Mr. Crawford was provided a copy of the December 23, 2019 reservation of rights letter on the same day, by email.

**DEFENDANTS' REQUEST FOR A DEFENSE AGAINST THE LAWSUITS**

51.     The Claimants filed the Lawsuits on December 23, 2019.

52.     Following service of the Lawsuits, the Claimants' counsel agreed to multiple extensions to allow the Named Defendants additional time to file a responsive pleading or Answer.

53.     Ultimately, by agreement from the Claimants' counsel, an Answer or responsive pleading was not due in either of the Lawsuits for any of the Named Defendants until at least March 11, 2020.

54.     On or about January 23, 2020, Mr. Crawford contacted Veronica Goldin, a senior claims adjuster with North American Risk Services ("NARS"), the third-party administrator for HDI, via telephone to request coverage for PF Holdings and Schoolhouse against the Lawsuit. During the call, Ms. Goldin requested that Mr. Crawford put his request in writing.

55.     On January 23, 2020, Mr. Crawford issued a written request to Ms. Goldin that HDI provide a defense to PF Holdings, as the real estate manager of the Property, and Schoolhouse, as a member of Ralston GA.

56.     On January 23, 2020, Ms. Goldin responded to Mr. Crawford's correspondence asking that Mr. Crawford provide a copy of the management agreement between PF Holdings and Ralston GA and evidence that Schoolhouse was a member of Ralston GA.  Ms. Goldin stated she would "communicate the information to the carrier that [Mr. Crawford] wanted them to provide a defense to [PF Holdings and Schoolhouse.]"

57.     On January 23 and 24, 2020, Mr. Crawford emailed Ms. Goldin documents related to his request for a defense for PF Holdings and Schoolhouse.

58.     On February 7, 2020, Ms. Goldin emailed Mr. Crawford advising the request for a defense was under consideration, stating "I am trying to get an answer as soon as possible."

59.     On February 7, 2020, Mr. Crawford emailed Ms. Goldin stating, in part, "It is our understanding based on communications that you have refused defense of our clients because they are not named insureds.  After providing information to you on January 23-24, 2020, we heard nothing until February 6, 2020, which was a message from you simply stating that the issue is being reviewed.  Our clients have deemed your response and inaction as a continued refusal to defend."  Mr. Crawford then advised he had undertaken the defense of PF Holdings and Schoolhouse, including filing an entry of appearance in the Lawsuits.

60.     On February 7, 2020, new settlement demands were issued by the Claimants'
counsel, addressed to Ms. Goldin, demanding in excess of policy limits to settle the Claimants'
claims (collectively, the "February 7, 2020 Demands").   (Copies of the February 7, 2020
settlement demands are attached hereto as Exhibits "H" and "I" respectively).

61.     Mr. Crawford was provided a copy of the February 7, 2020 Demands via email.

62.     The February 7, 2020 Demands were reissued on February 13, 2020.  (A copy of
the Claimants' counsel's February 13, 2020 correspondence is attached hereto as Exhibit "J").

63.     Responses to the February 7, 2020 Demands were due on February 24, 2020 at
noon.

64.     On February 21, 2020, counsel for HDI, Paul L. Fields, Jr., contacted Mr.
Crawford by phone regarding the February 7, 2020 Demands. Mr. Fields left a voicemail and
requested a call back.

65.     On February 21, 2020, Mr. Fields followed up his voicemail with an email to Mr.
Crawford advising "we have authority to accept [Schoolhouse and PF Holdings] tender under the
policy at issue," that Mr. Fields would like to speak with Mr. Crawford regarding the February 7,
2020 Demands, and requesting a call back from Mr. Crawford.  (A copy of Mr. Fields' February
21, 2020 email is attached hereto as Exhibit "K").

66.     Mr. Crawford did not respond to Mr. Fields' February 21, 2020 email or return
his voicemail.

67.     Accordingly, Mr. Fields, on behalf of HDI, issued a rejection of the February 7,
2020 Demands on February 24, 2020.  (A copy of Mr. Fields' February 24, 2020 letter is
attached hereto as Exhibit "L").

68.     The February 24, 2020 response specifically advised PF Holdings and Schoolhouse may be additional insureds under the Policy and that "HDI intends to assume their defense pursuant to a reservation of rights."

**PF HOLDINGS' AND SCHOOLHOUSE'S REJECTION OF HDI'S DEFENSE**

69.     On March 10, 2020, HDI issued a reservation of rights letter and bilateral reservation of rights agreements to PF Holdings and Schoolhouse, via Mr. Crawford.  (A copy of Mr. Fields' March 10, 2020 reservation of letter and enclosed bilateral reservation of rights agreements are attached hereto as Exhibit "M").

70.     HDI's offer to assume the defense of PF Holdings and Schoolhouse occurred prior to the deadline for PF Holdings and Schoolhouse to respond to the Lawsuits.

71.     The reservation of rights letter explained HDI's agreement to participate in the defenses of PF Holdings and Schoolhouse against the Lawsuits, subject to a full reservation of rights and the enclosed bilateral reservation of rights agreement, as already indicated to PF Holdings and Schoolhouse by Mr. Fields' February 21, 2020 email.

72.     On March 11, 2020, Mr. Crawford responded to the March 10, 2020 reservation of rights correspondence via email, stating that PF Holdings and Schoolhouse would not execute the bilateral reservation of rights.   (A copy of Mr. Crawford's March 11, 2020 email is attached hereto as Exhibit "N").

73.     In his March 11, 2020 email, Mr. Crawford stated, in part, "We would love to have the insurer's assistance with the defense of the lawsuits but only if that assistance is unconditional and with confirmation that Schoolhouse Road Estates, Inc. and PF Holdings, LLC were and are insureds under the applicable insurance policy terms."  *Id.*

74.     On March 13, 2020, Mr. Fields responded to Mr. Crawford's March 11, 2020 email advising HDI disagreed with Mr. Crawford's characterization that HDI had ever denied PF Holdings and Schoolhouse a defense and reminding Mr. Crawford that "less than a month after [MR. Crawford's] January 23, 2020 email requesting a defense for [PF Holdings and Schoolhouse]" Mr. Fields left Mr. Crawford a voicemail and sent Mr. Crawford an email advising him that HDI was prepared to assume the defense of PF Holdings and Schoolhouse and that Mr. Crawford failed to respond.  (A copy of Mr. Fields' March 13, 2020 letter is attached hereto as Exhibit "O").

75.     In Mr. Fields' March 13, 2020 letter, Mr. Fields cited to *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109, 586 S.E.2d 228, 230 (2003), for the premise that even assuming *arguendo* that HDI had originally refused PF Holdings and Schoolhouse's requests for a defense, that under Georgia law an insurer is permitted to change its position in situations where an insurer has indicated its willingness to reconsider its insured's claim and has positively demonstrated that it considers the question of coverage to still be in issue, e.g., by undertaking a defense of its insured under a reservation of rights, as HDI had offered to do.

76.     Mr. Fields cited as an example of one of the many coverage issues raised by the Lawsuits, that the Lawsuits sought punitive damages which were explicitly excluded by the Policy.

77.     In Mr. Fields' March 13, 2020 letter, Mr. Fields further advised HDI would proceed to provide a defense under a unilateral reservation of rights if PF Holdings and Schoolhouse would not agree to the bilateral reservation of rights.

78.     Mr. Fields also again reminded PF Holdings and Schoolhouse had certain duties under the Policy, including duty to cooperate in the defense against the Lawsuits and not to voluntarily assume any obligation or incur any expense without HDI's consent.  *Id.*

79.     Mr. Fields requested confirmation if PF Holdings and Schoolhouse were disclaiming coverage under the Policy, and that if they were not, advised that HDI anticipated PF Holdings and Schoolhouse's full cooperation with respect to the Lawsuits and the Claimants' claims, including full cooperation with defense counsel appointed by HDI for PF Holdings and Schoolhouse.  *Id.*

80.     On March 16, 2020, Mr. Crawford responded to Mr. Fields' March 13, 2020 letter advising he disagreed with Mr. Fields' position, alleging HDI had "clearly denied coverage and a defense" to PF Holdings and Schoolhouse.  (A copy of Mr. Crawford's March 16, 2020 letter is attached hereto as Exhibit "P").

81.     In his March 16, 2020 letter, Mr. Crawford again advised PF Holdings and Schoolhouse only welcomed "unconditional assistance" from HDI.  *Id.*

82.     Mr. Crawford offered no legal basis supporting an insured can demand its insurer provide a defense without a reservation of rights.

83.     Mr. Crawford did not specifically challenge or take issue with any of the specific coverage issues raised by HDI in its reservation of rights, including the applicability of the punitive damages exclusion.

84.     On March 17, 2020, Mr. Fields responded to Mr. Crawford's March 16, 2020 letter stating, in part, as follows:

> Setting aside the apparent disagreement as to events leading to HDI's formal offer of a defense to PF and Schoolhouse, subject to a reservation of rights, it is indisputable at this point that HDI has offered to assume the defenses of both PF or Schoolhouse, subject to a reservation of rights.

17

> What remains uncertain is how your clients are responding to HDI's offer to assume the defenses of both PF or Schoolhouse, subject to a reservation of rights. Thus, for clarity's sake, please confirm if (1) PF and Schoolhouse are disclaiming coverage under the Policy or (2) that PF and Schoolhouse will be cooperating with David Mize, defense counsel appointed by HDI, and allowing David Mize to step in to represent PF and Schoolhouse as their counsel against the Lawsuits.

(A copy of Mr. Fields' March 17, 2020 letter is attached hereto as Exhibit "Q").

85.    Mr. Crawford responded to Mr. Fields' March 17, 2020 letter by email stating PF Holdings and Schoolhouse were not disclaiming coverage but were unwilling to accept a defense provided under a reservation of rights.  Mr. Crawford also again alleged HDI had previously disavowed coverage.

86.    Again, Mr. Crawford offered no legal basis supporting an insured can demand its insurer provide a defense without a reservation of rights.

87.    Again, Mr. Crawford did not specifically challenge or take issue with any of the specific coverage issues raised by HDI in its reservation of rights, including the applicability of the punitive damages exclusion.

88.    In response, Mr. Fields asked if Mr. Crawford had any documents supporting HDI disavowed coverage.

89.    Mr. Crawford did not provide any documents supporting HDI disavowed coverage in response.

90.    Instead, Mr. Crawford advised he needed HDI and NARS to produce, among other things, their entire claim file regarding the Lawsuits so he could "point out" the alleged denial of coverage.  (A copy of Mr. Crawford's March 17, 2020 email is attached hereto as Exhibit "R").

91.     On March 30, 2020, a unilateral reservation of rights letter was issued to PF Holdings and Schoolhouse.  (A copy of Mr. Fields' March 30, 2020 reservation of letter is attached hereto as Exhibit "S").

92.     Following issuance of the March 30, 2020 unilateral reservation of rights letter, defense counsel appointed by HDI to defend PF Holdings and Schoolhouse attempted to assume the defense of PF Holdings and Schoolhouse, including by working with Mr. Crawford.

93.     Upon information and belief, at some point following HDI's offer of a defense to PF Holdings and Schoolhouse, PF Holdings and Schoolhouse agreed with Claimants' counsel to submit to arbitration of the claims against Defendants asserted in the Lawsuits.

94.     Neither Mr. Crawford nor PF Holdings nor Schoolhouse made any effort to directly contact or notify HDI or HDI's counsel about PF Holdings and Schoolhouse's intent to agree to submit to arbitration.

95.     PF Holdings and Schoolhouse did not request HDI's consent to submit to arbitration of the Claimants' claims.

96.     HDI did not consent to submission of the Claimants' claims to arbitration.

97.     PF Holdings and Schoolhouse did not seek HDI's input or consent regarding the selection of the arbitrator, the venue of the arbitration, or the timing of the arbitration.

98.     PF Holdings and Schoolhouse, either directly or through Mr. Crawford, continuously rebuffed HDI's appointed defense counsel efforts to assist in their defense against the Claimants' claims.

99.     On May 1, 2020, Mr. Crawford advised HDI's appointed defense counsel via email as follows:

> I've thought a good deal about your potential assistance with these cases. The insurer denied coverage, a defense, and indemnification based on its

contention that PF Holdings and Schoolhouse Road Estates are not insureds under the applicable coverage.  The denial was unequivocal and forced these two entities to scramble to protect their interests as best they could.  The insurer's later-imposed conditions for providing a defense and its purported reservation of rights with respect to these two entities were too little, too late.

Accordingly, you may observe but not participate, unless you state in writing that your participation in the defense is without conditions or reservations.  If you can so state, we welcome you to the team.

100.    HDI's appointed defense counsel spoke with Mr. Crawford on May 6, 2020 and Mr. Crawford confirmed to HDI's appointed defense counsel that he and PF Holdings and Schoolhouse were refusing defense counsel's assistance unless the reservation of rights was withdrawn.

101.    Over the objection of HDI's appointed defense counsel, Mr. Crawford agreed with the Claimants' counsel to proceed to arbitrate the Claimants' claims on May 18-19, 2020.

## COUNT I – DECLARATORY RELIEF
### (NO DUTY TO DEFEND OR INDEMNIFY UNDER THE POLICY FOR BREACH OF DUTY TO COOPERATE)

102.    HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

103.    PF Holdings and Schoolhouse had a duty under the Policy to cooperate with HDI in the investigation, settlement, and defense of the Lawsuits and the claims asserted therein.

104.    HDI offered PF Holdings and Schoolhouse a defense against the Lawsuits and the claims asserted therein, subject to a complete reservation of rights, as permitted under Georgia law.

105.    HDI's offer a defense was made prior to the deadline for either of PF Holdings and Schoolhouse to respond to the Lawsuits.

106.    PF Holdings and Schoolhouse rejected HDI's offer a defense under a reservation of rights.

20

107.    PF Holdings and Schoolhouse have refused to allow defense counsel appointed by HDI to participate in their defense.

108.    PF Holdings and Schoolhouse agreed to proceed to arbitrate on May 17-18, 2020 over the objection of HDI's appointed defense counsel.

109.    PF Holdings and Schoolhouse have failed to comply with their obligation to cooperate in the defense against the Lawsuits and the claims asserted therein.

110.    PF Holdings and Schoolhouse's non-compliance with the Policy's cooperation provision constitutes a material failure to comply with a condition of coverage.

111.    Based on PF Holdings and Schoolhouse's breach of their obligations under the Policy, namely their duty to cooperate with HDI in the investigation or settlement of the Lawsuits and the claims asserted therein, HDI requests a declaration that it has no duty to defend PF Holdings and Schoolhouse against the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or in any arbitration of the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, and that in the absence of a duty to defend, HDI also has no duty to indemnify PF Holdings and Schoolhouse for the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or any arbitration award resulting from the claims asserted against PF Holdings and Schoolhouse in the Lawsuits.

## COUNT II – DECLARATORY RELIEF
### (BREACH OF OBLIGATION TO NOT ASSUME OBLIGATIONS WITHOUT HDI'S CONSENT)

112.    HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

113.    PF Holdings and Schoolhouse had a duty under the Policy to not voluntarily assume any obligation without HDI's consent.

114.    PF Holdings and Schoolhouse agreed to arbitrate the claims asserted by PF Holdings and Schoolhouse in the Lawsuits without notifying HDI or requesting HDI's consent.

115.    HDI did not consent to PF Holdings and Schoolhouse's submission to arbitration.

116.    The agreement to arbitrate the Claimants' claims was a voluntarily assumed obligation.

117.    The outcome of arbitration is the result of an obligation PF Holdings and Schoolhouse voluntarily assumed without HDI's consent.

118.    Based on PF Holdings and Schoolhouse's breach of its obligations under the Policy, namely their obligation not to voluntarily assume any obligation without HDI's consent, HDI requests a declaration that it has no duty to defend PF Holdings and Schoolhouse against the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or in any arbitration of the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, and that in the absence of a duty to defend, HDI also has no duty to indemnify PF Holdings and Schoolhouse for the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or any arbitration award resulting from the claims asserted against PF Holdings and Schoolhouse in the Lawsuits.

### COUNT III – DECLARATORY RELIEF
### (NO COVERAGE UNDER COVERAGE A)

119.    HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

120.    The Policy's Coverage A insuring agreement provides coverage for "bodily injury" or "property damage" that occurred during the policy period that was "caused by an 'occurrence'" and took place in the "coverage territory," subject to the Policy's terms, conditions, and exclusions.

121.   "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

122.   The claims against PF Holdings and Schoolhouse are based on a pattern of purposeful and deliberate conduct, not the result of an accident.

123.   Because the claims asserted in the Lawsuits do not trigger coverage under Coverage A, HDI requests a declaration that it has no duty to defend PF Holdings and Schoolhouse under the Policy's Coverage A against the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or in any arbitration of the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, and that in the absence of a duty to defend under the Policy's Coverage A, HDI also has no duty to indemnify PF Holdings and Schoolhouse under the Policy's Coverage A for the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or any arbitration award resulting from the claims asserted against PF Holdings and Schoolhouse in the Lawsuits.

## COUNT IV – DECLARATORY RELIEF
## (NO COVERAGE UNDER COVERAGE A PER EXPECTED OR INTENDED INJURY EXCLUSION)

124.   HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

125.   To the extent the Lawsuits could have triggered the Policy's Coverage A, Coverage A contains an Expected or Intended Injury Exclusion that excludes from coverage "'bodily injury' . . . expected or intended from the standpoint of the insured."

126.   The Lawsuits alleges that the Plaintiffs' injuries arose from purposeful, expected, deliberate, and intentional conduct that evidenced "a willful and wanton disregard for the safety of others" by PF Holdings and Schoolhouse.

127.    Because the claims asserted in the Lawsuits are excluded by the Expected or Intended Acts Exclusion, HDI requests a declaration that it has no duty to defend PF Holdings and Schoolhouse under the Policy's Coverage A against the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or in any arbitration of the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, and that in the absence of a duty to defend under the Policy's Coverage A, HDI also has no duty to indemnify PF Holdings and Schoolhouse under the Policy's Coverage A for the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or any arbitration award resulting from the claims asserted against PF Holdings and Schoolhouse in the Lawsuits.

## COUNT V – DECLARATORY RELIEF
### (NO COVERAGE UNDER COVERAGE B PER KNOWING VIOLATION OF RIGHTS OF ANOTHER EXCLUSION)

128.    HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

129.    To the extent the Lawsuits could have triggered the Policy's Coverage B, Coverage B contains a Knowing Violation of the Rights of Another Exclusion that states "this insurance does not apply to . . . 'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

130.    The Lawsuits allege that the Plaintiffs' injuries arose from purposeful, expected, deliberate, and intentional conduct that evidenced "a willful and wanton disregard for the safety of others" by PF Holdings and Schoolhouse.

131.    Because the claims asserted in the Lawsuits are excluded by the Knowing Violation of the Rights of Another Exclusion, HDI requests a declaration that it has no duty to defend PF Holdings and Schoolhouse under the Policy's Coverage B against the Lawsuits, the

claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or in any arbitration of the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, and that in the absence of a duty to defend under the Policy's Coverage B, HDI also has no duty to indemnify PF Holdings and Schoolhouse under the Policy's Coverage B for the Lawsuits, the claims asserted against PF Holdings and Schoolhouse in the Lawsuits, or any arbitration award resulting from the claims asserted against PF Holdings and Schoolhouse in the Lawsuits.

**COUNT V – DECLARATORY RELIEF**
**(NO DUTY TO INDEMNIFY PUNITIVE DAMAGES)**

132.    HDI incorporates the foregoing paragraphs 1-101 as if fully set forth herein.

133.    The Policy contains a Punitive Damages exclusion, that states: "This insurance does not apply to . . . any claim of or indemnification for punitive or exemplary damages.   If a 'suit' seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will provide a defense for such action.  We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages."

134.    The Claimants have sought punitive damages in the Lawsuits and in connection with the claims raised therein.

135.    The Policy excludes coverage for punitive damages.

136.    HDI seeks a declaration that it is not obligated to indemnify PF Holdings and Schoolhouse for any punitive or exemplary damages or any costs, interests or damages attributable to punitive or exemplary damages in the Lawsuits or resulting from the claims asserted therein.

**PRAYER FOR RELIEF**

WHEREFORE, HDI prays for:

1.      The Court to declare that no coverage exists under the Policy for the Lawsuits and the claims asserted therein and that judgment be entered in favor of HDI and against PF Holdings and Schoolhouse that HDI owes no duty to defend PF Holdings and Schoolhouse in the Lawsuits or against any claims or suits that may have been or may be brought arising out of the facts and claims alleged in the Lawsuits, including any arbitration of the claims alleged in the Lawsuits;

2.      The Court to declare that no coverage exists under the Policy for the Lawsuits and the claims asserted therein and that judgment be entered in favor of HDI and against PF Holdings and Schoolhouse that HDI owes no duty to indemnify PF Holdings and Schoolhouse for the Lawsuits or for any claims or suits that may have been or may be brought arising out of the facts and claims alleged in the Lawsuits, or for any arbitration award arising out of the facts and claims alleged in the Lawsuits;

3.      The Court to declare that no coverage exists under Coverage A for the Lawsuits and the claims asserted therein and that judgment be entered in favor of HDI and against PF Holdings and Schoolhouse that HDI owes no duty to indemnify PF Holdings and Schoolhouse under Coverage A for the Lawsuits or for any claims or suits that may have been or may be brought arising out of the facts and claims alleged in the Lawsuits, or for any arbitration award arising out of the facts and claims alleged in the Lawsuits;

4.      The Court to declare that no coverage exists under Coverage B for the Lawsuits and the claims asserted therein and that judgment be entered in favor of HDI and against PF Holdings and Schoolhouse that HDI owes no duty to indemnify PF Holdings and Schoolhouse under Coverage B for the Lawsuits or for any claims or suits that may have been or may be

brought arising out of the facts and claims alleged in the Lawsuits, or for any arbitration award arising out of the facts and claims alleged in the Lawsuits;

5.      The Court to declare that no coverage exists under the Policy for punitive or exemplary damages awarded in connection with the Lawsuits or the claims asserted therein;

6.      The Court to award HDI its costs of suit; and

7.      Such other relief as the Court deems just and proper.

Respectfully submitted, this 14th day of May, 2020.

**FIELDS HOWELL LLP**

_/s/ Paul L. Fields, Jr._

| | |
|---|---|
| 1180 West Peachtree Street | Paul L. Fields, Jr. |
| Suite 1600 | Georgia Bar No.:  003420 |
| Atlanta, GA 30309 | Kamber S. Burke |
| Telephone:      (404) 214-1250 | Georgia Bar No.:  787321 |
| Facsimile:      (404) 214-1251 | |
| Email:      pfields@fieldshowell.com | _Attorneys for Plaintiff_ |
|          kburke@fieldshowell.com | _HDI GLOBAL SPECIALTY SE_ |

27