**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA**

HDI GLOBAL SPECIALTY SE, f/k/a
International Insurance Company of
Hannover SE,

     Plaintiff/Counter-Defendant

vs.

PF HOLDINGS, LLC, SCHOOLHOUSE
ROAD ESTATES, INC., RALSTON GA,
LLC, PF RALSTON, LLC, PHILIP
HADLEY, and JENNIFER GLAUBIUS,

     Defendants/Counter-Plaintiffs

vs.

HDI GLOBAL SPECIALTY SE, f/k/a
International Insurance Company of
Hannover SE, and NATIONAL UNION
FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,

     Counter-Defendants

Civil Action No.: 4:20-cv-00103-CDL

## HDI'S RESPONSE IN OPPOSITION TO COUNTER-PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now, Plaintiff/Counter-Defendant HDI GLOBAL SPECIALTY SE ("HDI"), by and through its undersigned counsel, and submits its response in opposition to Counter-Plaintiffs Jennifer Glaubius, Phillip Hadley, Ralston GA LLC, PF Ralston LLC, Schoolhouse Road Estates, Inc., and PF Holdings LLC ("Counter-Plaintiffs")'s Motion for Partial Summary Judgment (ECF No. 67), showing the Court as follows:

## INTRODUCTION

Counter-Plaintiffs' Motion for Partial Summary Judgment is a masterclass in creating an alternate reality in hopes of avoiding the consequences of two insureds' blatant breaches of their obligations under insurance policies: the duty to cooperate with an insurer in the defense of claims and the duty to not assume obligations without an insurer's consent.  At its core, Counter-Plaintiffs' entire position is rooted in a denial of coverage that simply did not occur.

As a telling and fatal example of Counter-Plaintiffs' desperate attempts to convince this Court otherwise, in the second paragraph of their brief, Counter-Plaintiffs tell the Court "HDI's refusal to defend was communicated in an email."  This misrepresentation glosses over critical information, including that the "denial" Counter-Plaintiffs contend HDI made via email was, in actuality, (1) an email sent by a third-party administrator adjuster with no authority to deny coverage on behalf of HDI, (2) not sent to any insured, (3) and sent before the two additional insureds had even requested a defense or were served with a lawsuit.  Counter-Plaintiffs also ignore that the adjuster who authored that email testified she misspoke.  While Counter-Plaintiffs are comfortable with ignoring the facts inconvenient to their narrative, like the fact a denial by HDI never occurred, it is inescapable that Counter-Plaintiffs were never denied coverage.  Instead, they refused to cooperate with HDI in their defenses, agreed to arbitration without HDI's consent, prevented HDI's appointed defense counsel from participating in their defense, and agreed to

confirmation of a significant arbitration award.  As Counter-Plaintiffs' motion hinges entirely on a "denial" by HDI that never happened, and lacks legal support, their Motion should be denied.

Contrary to Counter-Plaintiffs' revisionist history, the undisputed facts show PF Holdings, LLC ("PF Holdings") and Schoolhouse Road Estates ("Schoolhouse") first requested HDI provide them a defense on January 23, 2020.  Notably, PF Holdings and Schoolhouse were neither named insureds nor additional named insureds under the policies issued by HDI.  On February 21, 2020, PF Holdings and Schoolhouse were advised HDI would accept their tender.  Defense counsel for PF Holdings and Schoolhouse was retained by HDI prior to an Answer being due.  Consistent with Georgia law and custom and practice, HDI issued a bilateral reservation of rights letter outlining the myriad of coverage issues implicated by the claims against PF Holdings and Schoolhouse. Inexplicably, PF Holdings and Schoolhouse balked at HDI's offer of a defense pursuant to a reservation of rights and refused to allow HDI's appointed defense counsel to participate in their defense unless HDI withdrew its reservation of rights.  When HDI appropriately maintained its reservation of rights, PF Holdings and Schoolhouse proceeded to arbitrate the claims against them, against defense counsel's wishes and without the consent of HDI.  The arbitration resulted in a multi-million dollar award which PF Holdings and Schoolhouse agreed to confirm, again without HDI's consent.  PF Holdings and Schoolhouse now ask the Court to force HDI to pay the award that, by PF Holdings and Schoolhouse's very design, HDI had nothing to do with.

Georgia law simply does not permit insureds to refuse a carrier's defense then force the exiled carrier to pick up the tab for an arbitration award the insureds exclusively brought upon themselves.  Instead, Georgia law requires PF Holdings and Schoolhouse live with the consequences of their contractual breaches and compels a finding that HDI has no obligation to indemnify them against the arbitration award.  Accordingly, HDI respectfully requests this Court

deny Counter-Plaintiffs' Motion for Partial Summary Judgment in its entirety.

## II.   **BACKGROUND FACTS**[1]

As Counter-Plaintiffs misstated and ignored material facts in their brief, included numerous unsupported and highly disputed facts, and submitted legal conclusions under the guise of a factual statements, HDI takes this opportunity to provide the Court with a complete recitation of the relevant and undisputed facts.  HDI addresses the numerous legal arguments included in Counter-Plaintiffs' statement of facts in the argument section of its response.[2]

### A.   The Policies[3]

Ralston GA owned an apartment complex known as "The Ralston," located in Columbus, Georgia (the "Property").  (ECF No. 69-2, ¶ 1).  PF Ralston owned the land where the Property was situated.  *Id.* at ¶ 2.  HDI issued Policy No. CAS000077/1700 to PF Ralston LLC and Ralston GA LLC effective December 28, 2017 through December 28, 2018 (the "2017-18 Policy").  *Id.* at ¶ 3.  HDI also issued Policy No. CAS000077/1800 to Ralston GA LLC and PF Ralston LLC, effective December 28, 2018 through December 28, 2019 (the "2018-19 Policy").  *Id.* at ¶ 4.  The 2018-19 Policy is substantially the same as the 2017-18 Policy.[4]  *Id.* at ¶ 5.  Neither PF Holdings nor Schoolhouse are additional named insureds under the Policies.  *Id.* at ¶ 6.

The Policies include, among other forms, a Commercial General Liability Coverage Form that addressed who may also be an insured, beyond the named insureds.  When the named insureds

---

[1] To avoid duplicative filings, HDI incorporates by reference its Statement of Material Facts (ECF No. 69-2). HDI also relies on its Response to Counter-Plaintiffs' Statement of Material Facts ("RSUMF"), filed concurrently hereto.

[2] In their recitation of the "facts," Counter-Plaintiffs routinely direct the Court to deposition testimony where Counter-Plaintiffs' counsel inappropriately asked a witness to draw a legal conclusion.  One such example is Counter-Plaintiffs' counsel asking HDI's corporate representative if a duty to defend was triggered by the Lawsuits, essentially asking HDI's corporate representative to adjudicate Counts I and II of Counter-Plaintiffs' Counterclaim.

[3] HDI does not respond to allegations related to National Union, who Counter-Plaintiffs contend provided certain excess coverage to the Ralston Entities, all of which are irrelevant to Counter-Plaintiffs' claims against HDI.

[4] These two policies are referred to collectively herein as the "Policies."  By referring to the Policies collectively, HDI does not concede that either, let alone both, of the Policies are triggered.  The number of occurrences or the relevant policy periods are not the subject of any of the pending motions for summary judgment.

were limited liability companies, potential additional insureds include the company's members with respect to the insured's business and any organization acting as the insured's real estate manager. *Id.* at ¶ 7. The Policies' Commercial General Liability Coverage Form also includes a Coverage A Bodily Injury and Property Damage insuring clause that provides HDI will pay sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. *Id.* at ¶ 8-10. The Policies' Commercial General Liability Coverage Form also includes a Coverage B Personal and Advertising Injury insuring clause, providing certain coverage for damages because of "personal and advertising injury" to which the Policies applied. *Id.* at ¶ 11. The Policies also contain a Punitive Damages exclusion, that states, in relevant part: "This insurance does not apply to . . . any claim of or indemnification for punitive or exemplary damages." *Id.* at ¶ 12. The Policies also state they do not cover attorneys' fees or attorneys' expenses taxed against the insured. *Id.* at ¶ 13. The Policies impose certain obligations on insureds including the duty to cooperate with HDI in defense against a lawsuit and forego assumption of any obligation without HDI's consent. *Id.* at ¶ 14.

### B. The Claimants' Pre-Suit Demands

Jennifer Glaubius and Phillip Hadley (the "Claimants") were both residents at the Property from 2015 to 2020 and 2013 to 2020, respectively. *Id.* at ¶ 15. On or about October 28, 2019, counsel for the Claimants forwarded two demands based solely on Georgia's Fair Business Practice Act to HDI, alleging his clients were duped into leasing apartments at the Property which were not well-maintained by PF Ralston and Ralston GA. *Id.* at ¶ 16. Mr. Hadley sought $1 million while Ms. Glaubius sought $2.5 million. *Id.* at ¶ 20. The demands specifically alleged the Claimants lacked hot water and heat in their apartments in January 2018 causing them to become "physically sick" and/or "injured" and generally alleged they experienced pest control issues and

bed bug bites at unspecified times.  *Id.* at ¶ 21, 22.  The demands did not include any other information about the Claimants' alleged injuries, including the nature or severity of the injuries, treatment sought or received, or the Claimants' current condition.  *Id.* at ¶ 23.  The demands also did not include any medical records, medical bills, or documentation substantiating the purported injuries.[5]  *Id.* at ¶ 24.  In a footnote to the demands, and without any supporting documentation, the Claimants' counsel expressed his belief that coverage should extend to PF Holdings and Schoolhouse as additional insureds under the Policies. [6]  (RSUMF, ¶ 190).  None of the Ralston Entities forwarded the demands to HDI.

On November 5, 2019, Veronica Goldin, an adjuster with North American Risk Services ("NARS"), HDI's third-party administrator ("TPA"), acknowledged the Claimants' October 28, 2019 demands.  (ECF No. 69-2, ¶ 29).  As HDI's TPA, NARS could investigate claims, but did not have authority to deny coverage.  *Id.* at ¶ 30.  Ms. Goldin requested the opportunity to obtain statements from the Claimants and asked for authorizations to obtain medical records.  *Id.* at ¶ 31.  Claimants' counsel did not respond to her requests.  *Id.* at ¶ 32.  Ms. Goldin's claim investigation included review of local news articles and undated HUD information.  (RSUMF, ¶ 43, 44).

On December 6, 2019, after seeking input from the Ralston Entities' personal counsel, Jason Crawford, HDI timely responded to the demands via defense counsel retained for PF Ralston and Ralston GA, explaining the need for more information to evaluate the claims.  (ECF No. 69-2, at ¶ 33).  On December 23, 2019, Ms. Goldin issued a reservation of rights letter to Ralston GA and PF Ralston via Chaim Puretz, the point of contact for all of the Ralston Entities, copying Mr.

---

[5] The only documents enclosed in support of the demands were trial testimony excerpts for another case against the Ralston Entities arising out of the unfortunate death of a former resident, Charles Hart, in July 2017 from allegedly non-functioning air conditioning in his apartment.  *Id.* at ¶ 25, 26.  Mr. Hart's estate was ultimately awarded $125 million at trial.  *Id.* at ¶ 27.  The testimony did not mention the Claimants' alleged injuries and sickness.  *Id.* at 28.
[6] The October 28, 2019 demands defined "the Ralston Entities" as PF Ralston and Ralston GA.  *Id.* at ¶ 17.  These demands were originally sent to the Ralston Entities on or around September 9, 2019.  *Id.* at ¶ 19.  Going forward, PF Ralston, Ralston GA, Schoolhouse, and PF Holdings will be referred to herein as the "Ralston Entities."

Crawford.  *Id.* at ¶ 34.  The letter advised HDI would defend the named insureds, PF Ralston and Ralston GA, subject to a reservation of rights, and confirmed the appointment of Bradley Wolff of Swift Currie as defense counsel.  *Id.* at ¶ 35.  The letter noted Swift Currie would not represent HDI on any coverage questions.  *Id.* at ¶ 36.  The letter identified numerous issues that would potentially bar coverage for the Claimants' claims, including the punitive damages exclusion.  *Id.* at ¶ 37.  The letter did not discuss any other entity seeking coverage as an additional insured.  *Id.* at ¶ 38.  The letter also stated, "If there are any errors in our recitation of the facts or law or any additional facts, documents, circumstances or law which you believe are pertinent to our response to the settlement demands or a duty to defend or indemnify, please provide that information in writing as soon as possible."  *Id.* at ¶ 39.  No one responded to the letter.  *Id.* at ¶ 40.

### C.     The Lawsuits

The Claimants proceeded to file suits against the Ralston Entities in Muscogee County (the "Lawsuits").  *Id.* at ¶ 41.  On December 27, 2019, the Claimants' counsel forwarded Ms. Goldin courtesy copies of the Lawsuits.  *Id.* at ¶ 42.  As of December 27, 2019, neither PF Holdings nor Schoolhouse had requested a defense from HDI.  *Id.* at ¶ 60.  A claim notification form was prepared by NARS' initial claim setup team immediately after notification of the claim, as was customary for all HDI claims.  The initial claim setup team stated in the form "no additional insureds."  As has been repeatedly confirmed by deposition testimony in this case, neither NARS nor HDI ever determined PF Holdings and Schoolhouse were not additional insureds.  (RSUMF, ¶ 191).  Indeed, NARS did not even have authority to make such a determination.  *Id.* at ¶ 192.

The Lawsuits claimed PF Ralston leased the Property to Ralston GA, who was responsible for the maintenance and operation of the Property.  (ECF No. 69-2 at ¶ 43).  The Lawsuits also claimed PF Holdings managed the Property for a monthly fee and that Schoolhouse was the sole member and direct controlling entity of Ralston GA.  *Id.* at ¶ 44.  The Lawsuits attached the same

four exhibits, none of which discussed the members of PF Ralston in 2017 to 2019 or the real estate manager of the Property from 2017 to 2019. *Id.* at ¶ 45. In the Lawsuits, the Claimants alleged poor living conditions at the Property as early as July 2014. *Id.* at ¶ 46. As a result of a January 4, 2018 HUD inspection, HUD ordered PF Ralston to provide hotel rooms for residents without hot water and/or heat. *Id.* PF Ralston purportedly provided hotel rooms for two nights at a Motel 6 approximately 3.3 miles away from the Property. *Id.* at ¶ 48. The Claimants alleged they were told on Sunday, January 7, 2018, they had to leave because the Property's owners would not pay for more nights. *Id.* at ¶ 49. Per the Claimants, buses did not run on Sundays, requiring they walk roughly 3.3 miles back to the Property in the cold. *Id.* at ¶ 50. The Lawsuits provided minimal information about the nature or extent of the Claimants' alleged injuries and damages. *Id.* at ¶ 51. Mr. Hadley claimed that he "got sick and sustained injuries to his leg" from walking back to the Property in the cold. *Id.* at ¶ 52. Ms. Glaubius similarly alleged that while walking back she "got sick and sustained injuries." *Id.* at ¶ 53. In the Lawsuits, the Claimants also generally alleged they received bed bug bites during unspecified times. *Id.* at ¶ 54. There were no allegations as to the severity of the injuries, present status of the injuries, medical treatment, or medical expenses incurred. *Id.* The Lawsuits asserted claims for (1) violation of Georgia's Fair Business Practices Act, (2) negligence, (3) breach of implied warranty of habitability/invasion of the right of private occupancy of a room, (4) attorneys' fees, and (5) punitive damages. *Id.* at ¶ 55.

### D.     PF Holdings and Schoolhouse's Defense Rejection and Non-Cooperation

On December 30, 2019, Mr. Wolff asked Ms. Goldin for confirmation of the entities he was representing. (ECF No. 67-16). Ms. Goldin responded on January 3, 2020 that he could accept service on behalf of the named insureds, PF Ralston and Ralston GA. *Id.* As Ms. Goldin confirmed during her deposition, she misspoke in her January 3, 2020, email to Mr. Wolff when she wrote HDI did not insure PF Holdings or Schoolhouse. (RSUMF, ¶ 193). As of January 3,

2020, no defense had even been requested by either PF Holdings or Schoolhouse, and no decision as to their status as potential additional insureds had been made.  (ECF No. 69-2, ¶ 60).

On January 6, 2020, Mr. Wolff sent a letter to PF Ralston and Ralston GA via Mr. Puretz advising he had been retained to represent those two entities against the Lawsuits.  *Id.* at ¶ 56.  The letter did not communicate anything regarding a coverage determination by HDI for Schoolhouse or PF Holdings or remotely advise HDI was denying coverage to Schoolhouse or PF Holdings.  *Id.* at ¶ 57.  Notably, Mr. Puretz, as PF Ralston and Ralston GA's contact and recipient of the December 2019 reservation of rights letter, had already been explicitly informed by NARS that Mr. Wolff could not represent HDI on anything related to coverage.  *Id.* at ¶ 36.  PF Holdings and Schoolhouse were served with the Lawsuits on January 13, 2020.  *Id.* at ¶ 58.

On January 23, 2020, Mr. Crawford sent an email to Ms. Goldin requesting HDI also defend PF Holdings and Schoolhouse as additional insureds.  *Id.* at ¶ 59.  This request made no reference to a prior denial and did not seek "reconsideration" or ask HDI to "reverse" a prior decision.  (RSUMF, ¶ 194).  In fact, Mr. Crawford's email made no mention of any prior coverage determination at all.  *Id.*  Instead, Mr. Crawford's January 23, 2020 email was the first time PF Holdings or Schoolhouse requested a defense.  (ECF No. 69-2, ¶ 60).  On January 23 and 24, 2020, Mr. Crawford provided Ms. Goldin with a 2014 tax form showing Schoolhouse as the sole member of Ralston GA and a management agreement between PF Ralston and Ralston GA.  *Id.* at ¶ 61.

After falling ill at the end of January 2020, Ms. Goldin subsequently acknowledged receipt of the request and documents and advised the information and defense request was being reviewed and she would relay HDI's decision as soon as she received it.  *Id.* at ¶ 62.  Coverage was never denied to PF Holdings or Schoolhouse and a written denial was never issued.  *Id.* at ¶ 63.  On February 5, 2020, a stipulation was entered extending the time to file an Answer for the Ralston

Entities until March 11, 2020.  *Id.* at ¶ 64.  At this point, while a defense request was under consideration, there was no mention of the allegedly ongoing discussions of arbitrating the claims to NARS or HDI.  Despite the fact that a coverage denial was never communicated to either PF Holdings or Schoolhouse, that Ms. Goldin had informed Mr. Crawford that PF Holdings and Schoolhouse's request for a defense was under consideration, and that the deadline to respond to the Lawsuits was over a month away, on February 7, 2020, PF Holdings and Schoolhouse somehow concluded HDI had denied coverage.  *Id.* at ¶ 65.  Mr. Crawford sent an email to Ms. Goldin on February 7, 2020 advising PF Holdings and Schoolhouse were assuming a denial of coverage and he intended to proceed with their representation.  *Id.* at ¶ 66.  Again, there was no mention of the discussion or agreement to arbitrate the Lawsuits.  *Id.*

On February 7, 2020, the Claimants issued new settlement demands for excess of policy limits, which were reissued on February 13, 2020 (collectively, the "February 2020 Demands"). *Id.* at ¶ 66.  On February 21, 2020, counsel for HDI, Paul L. Fields, Jr., contacted Mr. Crawford by phone regarding the February 2020 Demands and left a voicemail.  *Id.* at ¶ 67.  That same day, Mr. Fields followed up his voicemail with an email to Mr. Crawford advising "we have authority to accept [Schoolhouse and PF Holdings'] tender," and requesting a call back.  *Id.* at ¶ 68.  Mr. Crawford admittedly chose not to respond to Mr. Fields.  *Id.*  Mr. Fields, on behalf of HDI, responded to the February 2020 Demands on February 24, 2020, advising HDI was unable to consider the February 2020 Demands due to the lack of information about the Claimants' injuries, medical treatment, or any explanation or documentation supporting the amounts demanded.  *Id.* at ¶ 69.  HDI invited the Claimants to provide medical records, bills, and any explanation for their claimed damages for HDI's consideration.  *Id.* at ¶ 70.

On March 10, 2020, HDI issued a reservation of rights letter and bilateral reservation of

rights agreements to PF Holdings and Schoolhouse, via Mr. Crawford, appointing Huff Powell as defense counsel. *Id.* at ¶ 71. The reservation of rights letter explained HDI's agreement to participate in the defenses of PF Holdings and Schoolhouse against the Lawsuits, subject to a full reservation of rights and the enclosed bilateral reservation of rights agreement, as already indicated to PF Holdings and Schoolhouse by Mr. Fields' February 21, 2020 email. *Id.* at ¶ 72.[7]

On March 11, 2020, Mr. Crawford responded to the March 10, 2020 reservation of rights, stating PF Holdings and Schoolhouse would not execute it and "[w]e would love to have the insurer's assistance with the defense of the lawsuits but only if that assistance is unconditional and with confirmation that Schoolhouse Road Estates, Inc. and PF Holdings, LLC were and are insureds under the applicable insurance policy terms." *Id.* at ¶ 73. On March 17, 2020, Mr. Fields asked PF Holdings and Schoolhouse to confirm whether they were accepting HDI's offer of a defense. (RSUMF, ¶ 196). Per the letter, Mr. Fields did not advise HDI was denying coverage, despite Counter-Plaintiffs' mischaracterization otherwise. (*Id.*; ECF No. 67-1, p. 8). As a result of PF Holdings and Schoolhouse's inexplicable refusal to execute the bilateral reservation of rights, on March 30, 2020, HDI issued a unilateral reservation of rights.[8] (ECF No. 69-2, ¶ 74). Huff Powell, HDI-appointed defense counsel, tried to assume PF Holdings and Schoolhouse's defense, including by working with Mr. Crawford. *Id.* at ¶ 75. Mr. Crawford repeatedly confirmed PF Holdings and Schoolhouse would only accept "unconditional assistance." *Id.* at ¶ 76.

### E. PF Holdings and Schoolhouse's Unilateral Decision to Arbitrate

Shortly after PF Holdings and Schoolhouse's first request for a defense on January 23, 2020, PF Holdings and Schoolhouse unilaterally agreed with Claimants' counsel to binding

---

[7] The potential coverage issues raised mirrored those in the December 2019 reservation of rights letter. Neither Mr. Puretz nor Mr. Crawford ever objected to the December 2019 reservation of rights. (ECF No. 69-2, ¶¶ 34, 40, 72).
[8] Mr. Crawford never challenged the coverage issues raised in the reservation of rights or expressed concern as to Huff Powell. *Id*. at ¶ 77. Mr. Crawford also failed to provide documents supporting HDI disavowed coverage. *Id*. at ¶ 78.

arbitration of their claims. *Id.* at ¶ 79. Neither PF Holdings nor Schoolhouse asked HDI for consent to arbitrate the Lawsuits or requested input or consent regarding selection of the arbitrator. *Id.* at ¶ 80. Indeed, PF Holdings and Schoolhouse did not consult HDI or NARS in any way about the arbitration. *Id.* at ¶ 81. Instead, PF Holdings and Schoolhouse, through Mr. Crawford, continuously rebuffed HDI's appointed defense counsel's efforts to assist in their defenses.

On May 1, 2020, Mr. Crawford advised Huff Powell "you may observe but not participate, unless you state in writing that your participation in the defense is without conditions or reservations. If you can so state, we welcome you to the team." *Id.* at ¶ 82. Huff Powell spoke with Mr. Crawford on May 6, 2020 and Mr. Crawford confirmed again that PF Holdings and Schoolhouse were refusing defense counsel's assistance unless HDI withdrew its reservation of rights. *Id.* at ¶ 83. Over the objection of Huff Powell, Mr. Crawford proceeded to arbitrate on May 18-19, 2020. *Id.* at ¶ 85. With Huff Powell relegated to sidelines, Mr. Crawford proceeded with the arbitration. On July 27, 2020, an award was issued in the arbitration. *Id.* at ¶ 86. The award stated PF Holdings and Schoolhouse admitted liability as to some of the Claimants' claims but not damages. *Id.* at ¶ 87. The arbitrator found in favor of the Claimants on the claims of negligence, interference with property rights, breach of implied warranty and wrongful eviction. *Id.* at ¶ 88. The arbitrator issued an attorney's fees award against PF Holdings and Schoolhouse based on their bad faith conduct. *Id.* at ¶ 89. The arbitrator also awarded punitive damages against Schoolhouse, noting Schoolhouse "knew its misconduct was wrongful." *Id.* at ¶ 90.

No medical records were submitted during the arbitration. *Id.* at ¶ 95. During depositions in this case, Ms. Glaubius stated she tripped and fell in a hole on the side of the road on her walk back to the Property from the Motel 6, exacerbating a previous condition in her knee and eventually causing her hip pain. *Id.* at ¶ 96. Ms. Glaubius saw a physician once about a month after the fall

and was prescribed a pain relief cream for her knee, Lidocaine patches her hip, and ibuprofen. *Id.* at ¶ 97.  Ms. Glaubius also testified she got an upper-respiratory type cold from walking back to the Property which she self-treated with over-the-counter cold medicine for two to three weeks. *Id.* at ¶ 98.  Ms. Glaubius sought treatment once regarding bed bug bites but was not prescribed any treatment. *Id.* at ¶ 99.  Mr. Hadley similarly testified he "got a bad cold" from walking back from the Motel 6 that lasted four days and that he took cold medicine tablets to treat it. *Id.* at ¶ 100.  Mr. Hadley also testified he tripped in a hole on the side of the road on his walk back to the Property, injuring his leg, but he did not seek medical treatment. *Id.* at ¶ 101.  Mr. Hadley also self-treated his bed bug bites with Benadryl cream and never saw a doctor for the bites. *Id.* at ¶ 102.  Mr. Puretz did not testify for PF Holdings or Schoolhouse at arbitration.  (RSUMF, ¶ 197).

The arbitrator ultimately awarded $7 million in compensatory damages and $3.5 million in attorney's fees to Jennifer Glaubius against PF Holdings and Schoolhouse and $21 million in punitive damages against Schoolhouse.  (ECF No. 69-2 at ¶ 91).  The arbitrator awarded $5 million in compensatory damages and $2.5 million in attorney's fees to Phillip Hadley against PF Holdings and Schoolhouse and $15 million in punitive damages against Schoolhouse. *Id.* at ¶ 92.  The arbitrator found PF Holdings and Schoolhouse were jointly and severally liable for all damages except punitive damages. *Id.* at ¶ 93.  The arbitrator repeatedly cited testimony from the Hart matter in explanation of his findings.  (RSUMF, ¶ 198).  On July 30, 2020, the Claimants, PF Holdings, and Schoolhouse jointly asked the State Court of Muscogee County confirm the award, stating PF Holdings and Schoolhouse did not oppose confirmation.  (ECF No. 69-2, ¶ 94).

## LEGAL ARGUMENT

### A.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986).  Any alleged factual dispute is insufficient; there must be a genuine issue of material fact.  *Anderson,* 477 U.S. at 247–48.  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.

Counter-Plaintiffs misstate Georgia law on insurance interpretation, consolidating Georgia's multi-step approach to policy interpretation with certain rules of construction.  When interpreting insurance policies, courts first look to the text of the policy and "if it is 'explicit and unambiguous,'" the Court applies the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" *Principle Sols. Grp., LLC v. Ironshore Indem., Inc.,* 944 F.3d 886, 890 (11th Cir. 2019).  Only if a provision is found to be ambiguous do courts then move on to apply any statutory rules of contract construction, including those referenced by Counter-Plaintiffs.  *Id.*; *Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.*, 266 Ga. 260, 262, 466 S.E.2d 4, 6 (1996).

### B.   HDI Fulfilled Its Obligations Under the Policies by Offering a Defense to PF Holdings and Schoolhouse

The record in this case establishes that, as a matter of law, HDI fulfilled its obligations under the Policies by offering a defense to PF Holdings and Schoolhouse in advance of their Answer deadlines.  Indeed, at the time HDI advised PF Holdings and Schoolhouse that it would provide them a defense, the record reveals all that had been provided to HDI beyond bare allegations was a 2014 tax form showing Schoolhouse as the sole member of Ralston GA and a management agreement between PF Ralston and Ralston GA.  (ECF No. 69-2, ¶ 61).  Recognizing the potential for coverage as additional insureds, however, HDI accepted the tender of PF Ralston and Schoolhouse's defenses, timely fulfilling any duty to defend.  It was not until discovery in this action that there was any actual confirmation PF Holdings was serving as the property manager of the Property and that Schoolhouse was the sole member of Ralston GA.

Ignoring HDI's timely offer to assume their defenses, Counter-Plaintiffs engage in extensive discussion over whether a duty to defend PF Holdings or Schoolhouse existed at all under the Policies, in what amounts to an academic exercise.  As it is indisputable that HDI offered a defense to PF Holdings and Schoolhouse and appointed defense counsel in advance of their Answer deadlines, whether a duty to defend existed is essentially a mooted issue.

Moving on to the actual legal disputes in this matter, Counter-Plaintiffs ask this Court to find that HDI, who offered PF Holdings and Schoolhouse a defense prior to their Answers to the Lawsuit being due, somehow breached its duty to defend.  Counter-Plaintiffs' position is fatally built on an imaginary foundation, namely a denial of coverage by HDI that never occurred.  The unreasonableness of Counter-Plaintiffs' argument begins with Counter-Plaintiffs alleging "HDI issued an unqualified denial and refused to defend PF Holdings and Schoolhouse from October 28, 2019" – the very same date Claimants' counsel forwarded their demands to HDI for the first time.  (ECF No. 67-1, p. 13 of 23).  The absurdity continues with Counter-Plaintiffs incorrectly accusing HDI of deciding Schoolhouse and PF Holdings were not additional insureds in November 2019.  *Id.*  This accusation is based on two claim notes made by a NARS adjuster that merely acknowledged PF Holdings and Schoolhouse are not named insureds or named additional insureds under the Policies.  Acknowledgement of what the Policies actually say by NARS is not a determination of coverage by HDI, especially given the fact that NARS did not have authority to make coverage determinations on behalf of HDI.  (RSUMF, ¶ 192).

Determined not to let the actual facts upset their alternate reality, Counter-Plaintiffs next argue that in a January 3, 2020 email from Ms. Goldin, the NARS adjuster, to defense counsel at Swift Currie, "HDI unequivocally stated . . . the carrier does not insure PF Holdings or Schoolhouse" and that a defense would not be provided.  (ECF No. 67-1, p. 6 of 23).  Counter-

Plaintiffs ignore that this email was from NARS, who lacked authority to deny coverage, and that this email was not even communicated to PF Holdings or Schoolhouse.  (RSUMF, ¶¶ 66, 192). Counter-Plaintiffs also conveniently gloss over the context of this email, which was a response to Swift Currie's inquiry as to who Swift Currie was representing.  *Id.*  Most tellingly, Counter-Plaintiffs completely ignore that in her deposition, specifically with regards to this email, Ms. Goldin admitted she misspoke when she stated PF Holdings and Schoolhouse were not insureds and would not be defended by HDI.  (RSUMF, ¶ 193).

Counter-Plaintiffs' reliance on the January 3, 2020 email between Swift Currie and NARS is not only factually unsound, but legally defunct.  As an initial matter, Counter-Plaintiffs' brief is completely remiss of *any* legal authority suggesting an email exchange between a third party adjuster and appointed defense counsel that the insureds were not a part of and which took place prior to the insureds even being served with the lawsuit, could constitute a denial of coverage. Moreover, any communication from Mr. Wolff could not be considered a denial as Mr. Crawford and Mr. Puretz were indisputably aware Mr. Wolff did not represent HDI on any coverage matters. A statement from defense counsel who does not represent HDI on coverage matters that purely confirms the two entities he had been asked to represent falls far short of an "unambiguous, unconditional, and unqualified" denial.  Counter-Plaintiffs cite absolutely no authority suggesting otherwise.  Indeed, Counter-Plaintiffs' position would essentially create new law in Georgia allowing an insured to infer a denial based on what a third party did not say.  Taking Counter-Plaintiffs' argument to its logical end, an insured could decide, without any communication from the insurer, before even being served with suit, that coverage had been denied by the insurer and the insured had free reign to breach any and all policy conditions without consequence.

Counter-Plaintiffs' position not only requires the invention of new Georgia law, but a

departure from established Georgia precedent.  Here, to find a denial occurred in either Ms. Goldin's January 3, 2020 email to Swift Currie or in Swift Currie's January 6, 2020 letter of representation to the named insureds, this Court would have to overrule Georgia law that requires an additional insured to elect coverage.  *Hicks v. Continental Ins. Co.*, 245 S.E.2d 482, 483 (Ga. Ct. App. 1978); *Southeastern Stages, Inc. v. General Fire & Cas. Co.*, 260 S.E.2d 399, 400 (Ga. Ct. App. 1979); *Adwater v. Georgia Ins. Co.*, 316 S.E.2d 2, 4-5 (Ga. Ct. App. 1984); *Travelers Cas. & Sur. Co. v. Stewart*, No. 1:14-CV-0837-AT, 2015 WL 11233188, at *6 (N.D. Ga. Aug. 7, 2015), aff'd, 663 F. App'x 784 (11th Cir. 2016); (ECF No. 69-2, ¶ 60).[9]  As Counter-Plaintiffs did not request coverage until January 23, 2020, any correspondence sent prior to then, particularly when not even directed to PF Holdings or Schoolhouse and sent by defense counsel, cannot constitute a denial of coverage.

Even assuming arguendo that either Mr. Wolff advising PF Ralston and Ralston GA he had been retained to represent them or an admittedly inaccurate comment in an email neither PF Holdings nor Schoolhouse received could amount to a denial, Georgia law allows an insurer to change its position when an insurer has indicated its willingness to reconsider its insured's claim and has demonstrated that it considers outstanding questions of coverage to exist, e.g., by defending its insured under a reservation of rights.  *Colonial Ins. Co. of California v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391, 393, 556 S.E.2d 486, 488 (2001); *Danforth v. Gov't Emps. Ins. Co.*, 282 Ga. App. 421, 424, 638 S.E.2d 852, 856 (2006). "By acting in this manner, the insurer eliminates any detriment to the insured that might result because of the insurer's reassessment of

---

[9] That HDI was aware of the Lawsuits and demands is irrelevant. *Travelers*, 2015 WL 11233188 at *6-7 ("In order to expressly elect coverage as an unnamed additional insured under an insurance policy after being named as a defendant in a suit for damages, the purported insured must typically forward a copy of the complaint and summons to the insurer. Notice of the lawsuit provided to the insurance company by someone other than the purported insured is insufficient to constitute an election of coverage by the additional insured.")

the initial denial." *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107, 109, 586 S.E.2d 228, 230 (2003). HDI indisputably offered to undertake the defense of PF Holdings and Schoolhouse under a reservation of rights less than a month after their defense request on January 23, 2020 and prior to their Answer deadline.  PF Holdings and Schoolhouse simply rejected HDI's offer.[10]

### C.    HDI Has No Duty to Indemnify PF Holdings or Schoolhouse Against the Arbitration Award After Breach of Their Contractual Obligations

As established above, HDI never denied coverage to PF Holdings or Schoolhouse.  To the contrary, HDI timely and appropriately offered to assume PF Holdings and Schoolhouse's defenses under a reservation of rights, as Georgia law advises insurers to do for claims that raise coverage questions.  (ECF No. 69-2, ¶¶ 68, 71).  As no denial ever occurred, or assuming arguendo one did occur but was timely rectified as Georgia law allows, PF Holdings and Schoolhouse had two independent obligations under the Policies: (1) to cooperate with HDI in their defense against the Lawsuits and (2) not to assume any obligation without HDI's consent.  PF Holdings and Schoolhouse, to their own detriment, breached both duties by refusing HDI's appointed defense counsel's participation in their defense and agreeing to arbitration and confirmation of the arbitration award without HDI's consent.  *Id.* at ¶ 14.  PF Holdings and Schoolhouses' breaches relieve HDI of any duty to indemnify against the arbitration award as a matter of law.

Counter-Plaintiffs seemingly acknowledge the Policies' contain these two material conditions and that breach of the conditions would result in no coverage.  *Id.* at ¶ 14; *Vaughan v. ACCC Ins. Co.*, 314 Ga. App. 741, 743, 725 S.E.2d 855, 858 (2012); *H.Y. Akers & Sons, Inc. v.*

---

[10] Thus, even assuming there was a denial of coverage initially by HDI, the remedy for this breach would be to reimburse PF Holdings and Schoolhouse for their defense costs associated with the Lawsuits up until a defense was offered on February 21, 2020.  *Colonial Oil Indus. Inc. v. Underwriters Subscribing to Pol'y Nos. TO31504670 & TO31504671*, 268 Ga. 561, 562, 491 S.E.2d 337, 339 (1997).  This is seemingly recognized by Counter-Plaintiffs who contend HDI is "liable for the costs of the defense."  (ECF No. 67-1, p. 14 of 23).  As Answers were not filed by PF Holdings or Schoolhouse until March 9, 2020, potentially reimbursable defense costs would seemingly be limited to Mr. Crawford drafting and filing an entry of appearance and agreeing to arbitration with Claimants' counsel.

*St. Louis Fire & Marine Ins. Co.,* 120 Ga. App. 800, 803, 172 S.E.2d 355, 358 (1969).  Indeed, Counter-Plaintiffs do not even dispute that they failed to comply with either obligation.  Instead, they incorrectly argue HDI's "denial" of coverage, which never occurred, gave PF Holdings and Schoolhouse license to proceed however they wanted and HDI would eventually be forced to foot the bill for PF Holdings and Schoolhouse's choices.  All of the cases cited by Counter-Plaintiffs deal with completely different circumstances, namely insurers who denied coverage to the insured and refused to defend, which simply did not happen here.[11]  PF Holdings and Schoolhouse must face the consequences of their rejection of HDI's defense and breach of their obligations.

### D.    HDI Did Not Waive Any Coverage Defenses

HDI's duty to indemnify is excused by PF Holdings and Schoolhouse's breaches of their duties and the Court should deny Counter-Plaintiffs' Motion accordingly.  Indulging Counter-Plaintiffs' fantasy that a denial occurred, Counter-Plaintiffs' remaining arguments are invalid. Regardless of any breach of a duty to defend and regardless of Counter-Plaintiffs' mistaken assertions otherwise, an insurer does not waive its right to contest recovery under its policies, because whether a policy provides coverage for claims "is separate from the legal consequences of an insurer's refusal to indemnify or defend."  *McGregor v. Columbia Nat. Ins. Co.*, 298 Ga. App. 491, 494, 680 S.E.2d 559, 562 (2009).  Thus, even if a defense was denied, there can be no recovery for any damages outside of the Policies' coverage. *Mock v. Cent. Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1345–46 (S.D. Ga. 2016); *Dowse*, 278 Ga. at 676.

Here, the arbitration award is comprised largely, if not completely, of explicitly non-covered damages.  Such damages include $6 million in attorney's fees and $36 million in punitive

---

[11] *See Owners Ins. Co. v. Smith Mech. Contractors, Inc.*, 285 Ga. 807, 810, 683 S.E.2d 599, 602 (2009); *S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 675, 605 S.E.2d 27, 28 (2004); *Georgia S. & F. Ry. Co. v. U.S. Cas. Co.*, 97 Ga. App. 242, 244, 102 S.E.2d 500, 502 (1958); *Rutledge v. Dixie Auto. Ins. Co.*, 106 Ga. App. 577, 579, 127 S.E.2d 683 (1962).

damages which, as discussed at length in HDI's Motion for Summary Judgment are explicitly excluded.[12]  (ECF No. 69-2, ¶ 12, 13); *Nautilus Ins. Co. v. Headhunters Racetrack, LLC,* No. 5:13-CV-00426 (LJA), 2016 WL 1270237, at *12 (M.D. Ga. Mar. 31, 2016).  Thus, HDI has no duty to indemnify the attorney's fees or punitive damages awards.

At to the remaining $12 million of the award, Counter-Plaintiffs fail to carry their burden of establishing these damages are covered.[13]  *McGregor* 298 Ga. App. at 497 (affirming duty to indemnify is limited to covered claims).  As an initial matter, a determination of what portion of the arbitration award is potentially covered under Coverage A or B is not even feasible given Counter-Plaintiffs' failure to secure an allocated award assigning damages to each count against PF Holdings and Schoolhouse.  Moreover, at the very least, issues of fact exist as to whether certain policy terms preclude recovery for the award.  While the word "negligence" is conveniently sprinkled throughout the arbitration award, the arbitrator noted PF Holdings and Schoolhouse's "callous and uncaring" nature in their management of the Property, responsiveness to resident complaints, and efforts to maintain a habitable premises, that PF Holdings and Schoolhouse were aware of and/or received numerous complaints and requests for maintenance that they failed to address, and that the Property had been mismanaged and in deterioration for years.  (ECF No. 67-43, pp. 1, 2, 17).  The arbitrator also determined both PF Holdings and Schoolhouse acted in bad faith in operating and maintaining the Property, a necessary finding for the attorney's fee award under O.C.G.A. 13-6-11, "exploited" the vulnerabilities of the residents, and "ignored complaints and requests for repairs and maintenance." *Id.* at pp. 12, 19.  The arbitrator also found PF Holdings and Schoolhouse violated O.C.G.A. 44-7-13, which would have required a determination that PF

---

[12] Attorneys' fees assessed against an insured do not constitute "damages" under the Policies. *Alea London Ltd. v. Am. Home Servs., Inc*., 638 F.3d 768, 780 (11th Cir. 2011).  Whether they are "compensatory" or "punitive" is irrelevant.
[13] Counter-Plaintiffs' demand for interest on the entire $54 million award, which they seemingly concede is mostly not covered, is absurd.

Holdings and Schoolhouse had superior knowledge of the Property's disrepair.  *Carey v. Bradford*, 218 Ga. App. 325, 325, 461 S.E.2d 290, 291 (1995).  All of these findings by the arbitrator at least create a question of fact as to whether PF Holdings and Schoolhouse expected or intended the Claimants to suffer the types of injuries they claimed, precluding rulings on whether an "occurrence" existed under Coverage A, whether the expected or intended exclusion under Coverage A would apply, or whether the knowing violations of rights of another exclusion under Coverage B would apply.  This is especially true for Schoolhouse, who was found to have acted purposefully and "with specific intent to cause harm."  (ECF No. 67-43, p. 25).  Indeed, the punitive damages award against Schoolhouse would preclude any coverage for Schoolhouse's conduct pursuant to the definition of "occurrence," or the expected or intended injury and knowing violation of rights of another exclusions.  With an improperly unallocated award,[14] a determination of what portion, if any, of the $12 million is covered is impossible and Counter-Plaintiffs have failed to carry their burden of proving covered damages.  *Essex Ins. Co. v. H & H Land Dev. Corp.*, 525 F. Supp. 2d 1344, 1346 (M.D. Ga. 2007) (noting insured's burden to prove claim within coverage and "occurrence" under Georgia law applies to injuries from accidental means, not accidental injuries arising from conscious, voluntary acts).

## CONCLUSION

For the foregoing reasons, HDI respectfully requests this Court deny Counter-Plaintiffs' Motion for Partial Summary Judgment in its entirety.

---

[14] As the arbitrator treated PF Holdings and Schoolhouse's conduct differently, distinguishing PF Holdings who had "no control over financial resources" from Schoolhouse, the intentional bad actor, the arbitrator incorrectly applied joint and several liability, in violation of the apportionment required by O.C.G.A. § 51-12-31.  PF Holdings and Schoolhouse's failure to seek HDI's consent before confirming this problematic award is another example of how HDI has been significantly prejudiced by Schoolhouse and PF Holdings' breaches of their contractual obligations.

Respectfully submitted this 2nd day of August, 2021.

                          **FIELDS HOWELL LLP**

                          */s/ Paul L. Fields, Jr.*

1180 West Peachtree Street      Paul L. Fields, Jr.
Suite 1600                        Georgia Bar No.: 003420
Atlanta, GA 30309             Kamber S. Burke
Telephone:   (404) 214-1250    Georgia Bar No.: 787321
Facsimile:    (404) 214-1251
Email:       pfields@fieldshowell.com   *Attorneys for Plaintiff/Counter-Defendant*
             kburke@fieldshowell.com   *HDI Global Specialty SE*

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| HDI GLOBAL SPECIALTY SE, f/k/a International Insurance Company of Hannover SE<br><br>  Plaintiff/Counter-Defendant<br><br>vs.<br><br>PF HOLDINGS, LLC, SCHOOLHOUSE ROAD ESTATES, INC., RALSTON GA, LLC, PF RALSTON, LLC, PHILIP HADLEY, and JENNIFER GLAUBIUS,<br><br>  Defendants/Counter-Plaintiffs<br><br>vs.<br><br>HDI GLOBAL SPECIALTY SE, f/k/a International Insurance Company of Hannover SE, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>  Counter-Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.:<br>4:20-cv-00103-CDL |

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have this date electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will automatically send e-mail notification of such filing

to all counsel of record.

| | |
|---|---|
| John C. Bonnie<br>jbonnie@wwhgd.com<br>Nancy F. Rigby<br>nrigby@wwhgd.com<br>**WEINBERG, WHEELER, HUDGINS,<br>GUNN & DIAL, LLC**<br>3344 Peachtree Rd. NE, Suite 2400<br>Atlanta, Georgia 30326<br><br>*Counsel for National Union Fire Insurance<br>Company of Pittsburgh, Pa.* | Jason Crawford<br>jason@crawfordandbrown.com<br>Dustin Brown<br>dustin@crawfordandbrown.com<br>**CRAWFORD AND BROWN LLP**<br>1430 Wynnton Road<br>Columbus, GA<br><br>*Attorneys for Defendants/Counterclaim<br>Plaintiffs PF Ralston. PF Holdings, Ralston<br>GA, and Schoolhouse Road Estates, Inc.* |

Charles A. Gower
charlie@cagower.com
Miranda J. Brash
miranda@cagower.com
Shaun O'Hara
shaun@cagower.com
**CHARLES A. GOWER, P.C.**
1425 Wynnton Road
P.O. Box 5509
Columbus, GA 31906

*Attorneys for Defendants/Counterclaim*
*Plaintiffs Jennifer Glaubius and Philip*
*Hadley*

This 2nd day of August, 2021.

FIELDS HOWELL LLP


1180 West Peachtree Street, NE          /s/ Paul L. Fields, Jr.
Suite 1600                              Paul L. Fields, Jr.
Atlanta, GA 30309                       Georgia Bar No.: 003420
(404) 214-1250                          Kamber S. Burke
(404) 214-1251                          Georgia Bar No.: 787321
pfields@fieldshowell.com
kburke@fieldshowell.com                 *Attorneys for Plaintiff/Counter-Defendant HDI*
                                        *Global Specialty SE*